IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LINDA J. WATTS, )
)
Plaintiff, )
) Case No. 05 C 3111
v. )
)
SBC SERVICES, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Linda J. Watts filed the present Complaint against her former employer SBC Services, Inc. ("SBC") alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e *et seq.*[1] Before the Court is SBC's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants SBC's motion.

## BACKGROUND

### I. Northern District of Illinois Local Rules

Because Watts is a pro se litigant, SBC served her with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois, Local Rule 56.2. The notice explained the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56(e)

---

[1] Because courts evaluate Section 1981 claims of discrimination and retaliation under the same framework as Title VII claims, the Court will not address the statutes separately. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004).

and Local Rule 56.1.

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. The purpose of Local Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *Solaia Tech. LLC v. Arvinmeritor, Inc.*, 361 F.Supp.2d 797, 826-27 (N.D. Ill. 2005). More specifically, it is not appropriate to set forth additional facts in a Rule 56.1(b)(3) response statement, instead, the parties must include any additional facts in a separate Rule 56.1 statement. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

The types of evidentiary material available to support Rule 56.1 Statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000). Under Federal Rule of Civil Procedure 56(e), supporting and opposing affidavits must show that the affiant is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible into evidence. *Markel v. Board of Regents of the Univ. of Wis.*, 276 F.3d 906, 912 (7th Cir. 2002).

Local Rule 56.1 statements and responses that do not properly cite to the record are subject to the Court's discretion as to their admission. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). Statements that are not contested are deemed admitted. *Brengettcy v. Horton,* 423 F.3d 674, 681 (7th Cir. 2005). Although courts construe pro se pleadings liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006), a plaintiff's pro se status does not

absolve her from complying with the Local Rules. *Greer v. Board of Ed. of City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")

With these principles in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

### A. Watts' Position in the Management Staffing Department

SBC employed Watts, an African-American female, as an at-will employee from May 10, 2001 until May 14, 2004. (R. 46-1, Def.'s Rule 56.1 Stmt. Facts, ¶ 1; R. 52-1, Pl.'s Rule 56.1 Stmt. Add'l Facts, ¶ 1.) Watts worked as a staffing specialist – first at the 225 West Randolph Street location and then at the 350 North Orleans office – both located in Chicago. (Def.'s Stmt. Facts. ¶ 4.) Specifically, Watts worked for the Business Communications Services ("BCS") Management Staffing Department, which was the department responsible for hiring management personnel for the BCS Group. (*Id.*) From October 2003 until September 2005, Lana McCalmon was the Leading Staffing Manager for BCS Midwest Management Staffing Group and was Watts' direct supervisor. (*Id.* ¶¶ 2, 6.) During the relevant time period, Renita Pettigrew, an African-American female, was McCalmon's immediate supervisor. (*Id.* ¶ 3.) Pettigrew was the Executive Director of Staffing, which included management and non-management staff for SBC's Midwest Region. (*Id.*)

The management staffing department consisted of staffing managers and staffing specialists. (*Id.* ¶ 7.) The staffing managers did not have any supervisory authority over the staffing specialists. (*Id.* ¶ 8.) Watts' job duties as a staffing specialist included initiating drug

3

screenings and background checks on applicants, notifying the staffing manager of any background check discrepancies, inputting new hires into the payroll system, generating offer letters for new hires, and filing. (*Id.* ¶ 9.) The management staffing team also provided customer service to people within SBC, as well as customer service to job applicants. (*Id.* ¶ 10.) Thus, Watts would routinely communicate with human resources generalists, the administrative assistants to hiring managers, and job applicants. (*Id.* ¶ 11.)

## B. Watts' Job Performance

On October 6, 2003, an SBC employee forwarded an email to Pettigrew concerning a complaint from a job applicant who stated that Watts had mistreated her. (*Id.* ¶ 13.) Upon receipt of this email, Pettigrew forwarded it to McCalmon with comments. (*Id.* ¶ 14.) Pettigrew also explained to McCalmon that this complaint was not the first complaint she had received regarding Watts' communication and service. (*Id.*) On October 15, 2003, McCalmon spoke with Watts regarding the October 6, 2003 complaint giving Watts feedback regarding her communication skills. (*Id.* ¶ 15.)

Watts' communication problems are illustrated by a 2003 incident involving staffing manager, Chyrisse Small. (*Id.* ¶ 16, Ex. B, Watts. Dep. at 127.) At her deposition, Watts testified that Small had asked her to complete an application that Watts believed the staffing managers were supposed to complete. (*Id.*) As such, Watts told Small it was her responsibility to complete the application. (*Id.*) When Small responded that she had a Master's degree, Watts replied "then master your job." (*Id.*)

On November 19, 2003, the Associate Director for Midwest Staffing Operations brought to McCalmon's attention that Watts had failed to cancel payroll processing for an applicant. (*Id.*

¶ 17.) As a result, SBC paid the applicant although SBC never hired him. (*Id.*) McCalmon spoke to Watts about this issue and Watts acknowledged that she failed to remove the applicant from the payroll system even though she had been instructed to do so. (*Id.* ¶ 18.)

In January and February 2004, McCalmon was also informed that Watts had placed two new hires into the payroll system before the background checks had been completed, which violated SBC's policies. (*Id.* ¶ 19.)

C.  **Performance Improvement Plan**

On February 2, 2004, Pettigrew informed McCalmon that she had personally received a number of complaints regarding Watts' communication with SBC employees within the prior two weeks. (*Id.* ¶ 22; Ex. C, McCalmon Aff., ¶ 7.) On February 9, 2005, McCalmon placed Watts on a performance improvement plan and met with Watts to explain to her that her job performance was unsatisfactory and needed to be improved. (*Id.* ¶¶ 23, 24.) Watts understood that the performance improvement plan document provided her with notice that if her job performance did not improve, SBC would take further disciplinary steps, including terminating her employment. (*Id.* ¶ 25.)

During the performance improvement plan period, McCalmon periodically met with Watts to discuss her job performance. (*Id.* ¶ 26.) McCalmon also updated the performance improvement plan document to reflect Watts' developments and to document the follow-up meetings. (*Id.* ¶ 28.) During the performance improvement plan period, McCalmon received additional complaints regarding Watts' job performance and rude behavior. (*Id.* ¶ 29.) After McCalmon extended the performance improvement plan period for an additional 30 days beyond its initial time period, she met with Watts to inform her that she had completed the performance

5

improvement plan. (*Id.* ¶¶ 31, 32.) McCalmon further told Watts that they would talk in 30 days to see how Watts was doing. (*Id.* ¶ 32.)

On May 5, 2004, a senior human resources generalist, Pam Medina, called McCalmon to inform her that Watts had been rude and uncooperative with several members of Medina's staff with respect to a payroll issue regarding a new hire, Craig Krupke. (*Id.* ¶ 33.) Medina also informed McCalmon that a staff member in the human resources operations service center requested that Watts no longer work with her due to Watts' behavior during the Krupke payroll incident. (*Id.*)

### D.   Watts' Termination

After the Krupke incident in May 2004, McCalmon recommended to Pettigrew that SBC terminate Watts' employment. (*Id.* ¶ 41.) Subsequently, Pettigrew spoke with McCalmon and a human resources generalist via telephone to discuss Watts' job performance history and performance improvement plan. (*Id.* ¶ 44.) After this telephone discussion, Pettigrew told McCalmon that she approved of McCalmon's recommendation to terminate Watts' employment with SBC. (Id.) SBC terminated Watts' employment on May 14, 2004. (Pl.'s Stmt. Add'l Facts ¶ 4.)

### E.   Retaliation Allegations

Watts contends that she complained to McCalmon regarding the fact that McCalmon approved of hiring two white applicants despite discrepancies between their employment application and the information revealed in their background checks. (Def.'s Stmt. Facts, ¶ 50.) Watts further asserts that SBC terminated her because she disagreed with McCalmon regarding the hiring of these two white applicants. (*Id.* ¶ 55.)

6

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

### I. Race Discrimination Claim[2]

A plaintiff alleging race discrimination may proceed along one of two routes in proving her case – the direct method of proof or the indirect, burden-shifting method of proof.

---

[2] In her pro se Complaint, Watts checked the box for both color and race as the basis of her discrimination claims. Watts' EEOC Charge of Discrimination states that Watts believes SBC discriminated against her because of her race. (R. 9-1, Complaint & EEOC Charge). Also, Watts' factual allegations with respect to her claim of color discrimination are identical to those of her race discrimination claim. (Def.'s Stmt. Facts ¶ 62.) Accordingly, the Court addresses Watts' claim as a race discrimination claim.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Scaife v. Cook County,* 446 F.3d 735, 739 (7th Cir. 2006). Watts has not come forward with any direct proof of race discrimination such as an admission by SBC that it terminated Watts' employment based on her race. *See Buie v. Quad/Graphics, Inc,.* 366 F.3d 496, 503 (7th Cir. 2004). Accordingly, the Court turns to the *McDonnell Douglas* burden-shifting method to determine whether SBC intentionally discriminated against Watts based on her race.

To establish a prima facie case of race discrimination, Watts must show that (1) she is a member of a protected class, (2) she was meeting SBC's legitimate job expectations at the time of the adverse employment action, (3) she suffered an adverse employment action, and (4) SBC treated similarly-situated employees outside her protected class more favorably than it treated Watts. *McDonnell Douglas,* 411 U.S. at 802; *Scaife,* 446 F.3d at 739. Watts must demonstrate each one of these four elements to establish a prima facie case of discrimination. *See Goodwin v. Board of Trs. of the Univ. of Ill.,* 442 F.3d 611, 617 (7th Cir. 2006). If Watts establishes a prima facie case of race discrimination, the burden shifts to SBC to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Scaife,* 446 F.3d at 739. If SBC provides a legitimate reason, the burden shifts back to Watts to establish that SBC's proffered reason is pretext for discrimination. *Id.* at 739-40. Watts bears the ultimate burden of proof. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Raymond v. Ameritech Corp.,* 442 F.3d 600, 610 (7th Cir. 2006).

### A. Second Prima Facie Element – Legitimate Job Expectations

Because the parties do not dispute that Watts is a member of a protected class and that she suffered an adverse employment action, the Court turns to the second prima facie element

under the *McDonnell Douglas* framework, namely, whether Watts can establish that she was meeting SBC's legitimate job expectations. Viewing the evidence and all reasonable inferences in a light most favorable to Watts, the record reveals that numerous SBC employees, as well as job applicants, complained to SBC's management about Watts' job performance and uncooperative behavior. Watts' supervisor, McCalmon, spoke to Watts on several occasions concerning her deficient job performance and behavior. Furthermore, after the Executive Director of Staffing, Renita Pettigrew, received additional complaints about Watts in February 2004, McCalmon placed Watts on a performance improvement plan. It is undisputed that by placing Watts on this plan, Watts was put on notice that if her job performance did not improve, SBC would take further disciplinary steps, including terminating her employment. After supervising Watts while she was on the performance improvement plan, McCalmon finally recommended to terminate Watts' employment because Watts continued to be rude and uncooperative with SBC staff, especially the human resources staff supervised by Pam Medina. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) (plaintiff did not meet employer's legitimate job expectations because her job performance did not improve during performance improvement plan).

Meanwhile, Watts' own perception of her job performance and behavior is insufficient to raise a genuine issue of material fact whether she was meeting SBC's legitimate job expectations at the time of her termination. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003) (fact that employee believed her evaluations were unwarranted is not enough to establish legitimate job expectations requirement); *Olsen v. Marshall & Isley Corp.*, 267 F.3d 597, 600 (7th Cir. 2001) ("employee's perception of his own performance, however, cannot tell a reasonable

9

factfinder something about what the employer believed about the employee's abilities"). As such, Watts has failed to set forth competent evidence to establish the second prima facie element under the *McDonnell Douglas* method of proof. *See* Fed. R. Civ. P. 56(e) (at summary judgment, adverse party must set forth specific facts showing genuine issue of material fact for trial).

### B. Fourth Prima Facie Element – Similarly Situated Employee

Next, SBC argues that Watts cannot establish the fourth prima facie element of race discrimination – whether SBC treated similarly-situated employees outside her protected class more favorably than Watts. To establish that another employee is similarly situated, Watts must show that there is someone who is directly comparable to her in all material respects. *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no 'differentiating or mitigating circumstances as would distinguish ... the employer's treatment of them.'" *Ineichen v. Ameritech*, 410 F.3d 956, 960-61 (7th Cir. 2005) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

Watts argues that SBC treated Marina Christos, a white staffing specialist, more favorably than it treated Watts. Specifically, Watts contends that McCalmon failed to discipline or terminate Christos for Christos' behavioral problems. Watts attempts to show that Christos is similarly situated based on her own deposition testimony that staffing managers had complaints about Christos' behavior and informed McCalmon about these complaints. (*See* Pl.'s Stmt.

Add'l Facts ¶¶ 3, 4, 5.) Watts' testimony about what staffing managers stated concerning Christos' behavior is hearsay because Watts is using these alleged statements for the truth of the matter asserted, namely, that Christos was uncooperative and that the staffing managers told McCalmon about Christos' behavior. *See* Fed.R.Evid. 801, 802; *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (hearsay inadmissible in summary judgment proceedings). Watts has not established that an exception to the hearsay rule applies under these circumstances, therefore, this deposition testimony is inadmissible. *See Boyce*, 314 F.3d at 889. Also, Watts has not presented any other evidence concerning Christos' alleged behavioral problems and whether anyone informed McCalmon of such behavior.

Accordingly, Watts fails to establish that Christos and she were engaging in the same conduct. *See Ineichen*, 410 F.3d at 960. Furthermore, not only is there a lack of admissible evidence as to Christos' job performance and McCalmon's knowledge of such, there is no indication that Christos was placed on a performance improvement plan which is a factor that distinguishes McCalmon's different treatment of Watts and Christos. *See id.* at 960-61. Moreover, Watts' further allegations that Christos had a television and alcohol at her desk does not establish the "similarly situated" factor because this conduct – even if true – is not similar to Watts' uncooperative behavior and performance problems. *See id.* Simply put, Watts cannot be similarly situated to an employee who engaged in different conduct. *Id.* at 961.

Watts also argues that she was treated less favorably than her former supervisor concerning the supervisor's ability to transfer to another office. Because her former supervisor is not directly comparable to her in all material respects, that is, her former supervisor did not hold the same job position as Watts, any such argument fails. *See Ajayi v. Aramark Bus. Servs., Inc.*,

11

336 F.3d 520, 532 (7th Cir. 2003). Furthermore, Watts did not bring a failure to transfer claim in her EEOC charge, and thus she did not administratively exhaust this claim within the pertinent statutory time frame. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Therefore, Watts is barred from pursuing a failure to transfer claim in federal court. *Cheek v. Peobody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996).

In sum, Watts has failed to set forth evidence creating a genuine issue of material fact for trial whether SBC treated similarly-situated employees outside her protected class more favorably than SBC treated Watts.

### C. Pretext for Discrimination

Even if Watts had established a prima facie case of race discrimination, Watts' claim fails because she has not demonstrated that SBC's stated reason for her termination was pretext for discrimination. Here, SBC has set forth evidence that its reason for terminating Watts' employment was based on her rude and uncooperative behavior with human resources staff concerning the Krupke incident that occurred after McCalmon placed Watts on a performance improvement plan for her previous performance deficiencies and uncooperative behavior.

Pretext is a "deliberate falsehood." *Forrester v. Rauland-Borg Corp.*, __ F.3d __, 2006 WL 1767760, at *3 (7th Cir. June 29, 2006). "'The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs.'" *Id.* (quoting *Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 323 (7th Cir. 2003)). Therefore, "the question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground."

12

*Forrester*, 2006 WL 1767760, at *1. The focus of the Court's pretext inquiry is thus whether SBC's stated reason was honest, not whether it was accurate, wise, or well-considered. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004).

The record indicates that McCalmon based her decision to terminate Watts' employment on Pam Medina's report that Watts had been rude and uncooperative with several members of Medina's human resources staff concerning a payroll issue. Medina's report echoed previous reports of Watts' uncooperative and rude behavior. In addition, McCalmon had placed Watts on a performance improvement plan for her previous job deficiencies and uncooperative behavior, yet Watts' performance did not improve as evidence by Medina's report. It is undisputed that by placing Watts on the performance improvement plan, SBC put Watts on notice that if her job performance did not improve, SBC would take further disciplinary steps, including terminating her employment. (Def.'s Stmt. Facts ¶¶ 41, 42.)

Watts, on the other hand, argues that SBC changed its reason for her termination several times, and thus the Court can infer that SBC's stated reason is pretext for discrimination. *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003). In *Appelbaum*, the court concluded that shifting and inconsistent explanations can provide a basis for a finding of pretext. *See id.* These explanations, however, must actually be shifting and inconsistent to permit such an inference. *Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003).

Here, the record reveals that the "different" reasons Watts highlights are actually consistent. First, SBC's Exit Package states that Watts was terminated "for failure to complete post 30-day review of performance improvement plan." (R. 52-1, Pl.'s Resp. Def.'s Stmt. Facts,

13

Watts Aff., Ex. 6, SBC Exit Package.) Watts also cites SBC's Position Statement on her EEOC Charge of Discrimination in support of her argument. Contrary to Watts' assertion, however, SBC's stated reason for her termination includes a thorough explanation of why Watts was placed on a performance improvement plan and the payroll dispute with the human resources staff. (R. 55-2, SBC's Position Statement, at 1-5.) Furthermore, the letter from the Department of Employment Security addressed to Watts stated that she was discharged because of "insubordination and/or a dispute with her supervisor." (*Id.*, Ex. 28, Security Letter.) Assuming that the Department of Employment Security can speak on behalf of SBC and McCalmon regarding reasons for Watts' termination, these explanations are not "shifting or inconsistent explanations" as Watts contends.[3]

Finally, Watts' offers her own opinion that her performance was not deficient and her behavior acceptable. (*See* Pl.'s Resp. Def.'s Stmt. Facts ¶ 33.) Watts' personal opinion carries no weight in the Court's pretext analysis. *See Balderston v. Fairbanks Morse Engine Div.*, 328 F.3d 309, 323 (7th Cir. 2003) (employee's "own belief that he was the best candidate is irrelevant to the question of pretext"). As such, Watts has not rebutted SBC's evidence by setting forth evidence that McCalmon's reason for terminating her was not true, that is, a deliberate falsehood. *See Forrester*, 2006 WL 1767760, at *3; *see also Butts*, 387 F.3d at 924 (non-moving party must present definite, competent evidence to rebut the summary judgment motion).

To survive summary judgment, Watts must present credible evidence on all matters upon

---

[3] Watts also points to SBC's Answer to support her claim that SBC changed its reasons for terminating her employment. The pages Watts cites to the Answer do not support her proposition, nor do any of the other individual answers to her allegations. (R. 23-1, Answer to Compl. of Employment Discrimination.)

14

which she bears the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322-23. Because she has failed to set forth admissible and relevant evidence creating a genuine issue of material fact concerning the second and fourth elements of a prima facie case of discrimination, as well as evidence of pretext, Watts' race discrimination claim fails. Therefore, the Court grants SBC's summary judgment motion as to Watts' race discrimination claim.

## II. Retaliation Claim

Next, Watts contends that SBC retaliated against her because she complained to McCalmon about McCalmon's approval of hiring two white applicants despite discrepancies between their employment application and the information in their background checks. "Title VII forbids an employer from punishing an employee for complaining about discriminating treatment in the workplace." *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). (citing 42 U.S.C. § 2000e-3(a)). "Retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Durkin*, 341 F.3d at 614.

Watts can establish retaliation by using either the direct method or the indirect, burden-shifting method of proof. *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 903 (7th Cir. 2005). Watts attempts to establish her retaliation claim under the direct method, which requires her to show: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection between the two. *Id.*; *see also Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 643-44 (7th Cir. 2002). As the Seventh Circuit recently clarified, a plaintiff may establish retaliation under the direct method through circumstantial evidence. *Sylvester v. SOS Children's Villages Ill., Inc.*, ___ F.3d ___, 2006 WL

15

1896394, at *1 (7th Cir. July 12, 2006).

### A. Protected Expression

Because it is undisputed that Watts suffered an adverse employment action, the Court addresses the other two requirements under the direct method of proof. First, the Court must decide whether Watts' complaint to McCalmon concerning the hiring of the two white applicants is statutorily protected activity or expression, that is, whether Watts' complaint was about discriminatory conduct. *See Durkin*, 341 F.3d at 614. "It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." *Id.* at 614-15. Statutorily protected activity includes the filing of an EEOC charge of discrimination or participating in litigation. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1060-61 (7th Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). The Seventh Circuit, however, has yet to resolve whether informal complaints constitute protected expression when a formal complaint procedure is in place. *See, e.g., Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004) (declining to resolve "whether Rhodes engaged in protected activity because she failed to comply with IDOT's request to formally complaint in writing"); *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (noting Seventh Circuit has yet to rule on whether informal complaints constitute protected expression). Assuming that informal complaints can constitute protected activity, they must be sufficiently specific "so that the employer is aware of the mistreatment and the corresponding protected activity." *Durkin*, 341 F.3d at 614 (complaints that are "vague and concerned subject matters other than harassment," are not statutorily protected activity).

Here, Watts contends that her complaints to McCalmon regarding the white applicants

16

are protected activity. Watts' complaints, however, are not only vague, but do not involve accusations of racial discrimination. Instead, Watts complained to McCalmon about certain white job applicants who had allegedly falsified their background information. (*See* Def.'s Stmt. Facts ¶ 50, Ex. B, Watts' Dep. at 243.) Specifically, Watts testified at her deposition that she told McCalmon that one of the applicants' false statements violated the code of business conduct after which McCalmon stated she was going to hire the applicant anyway. (*Id.*, Ex. B, Watts Dep. at 270.) Watts further contends that SBC did not hire two black applicants with similar background discrepancies, and thus her complaint to McCalmon concerned racism. (*See* R. 52-1, Resp. Def.'s Stmt. Facts ¶ 41.) These incidents, however, occurred before McCalmon became the Leading Staffing Manager for BCS Midwest Management Staffing Group. (Def.'s Stmt. Facts ¶ 54.) In fact, Watts knows of no black applicants who had background check discrepancies while McCalmon was in a position to evaluate those applicants. (*Id.*) Further, there is no evidence in the record that McCalmon was aware of the black applicants or that Watts told McCalmon that her approval of the white applicants was inappropriate because two black applicants were not hired under similar circumstances.

Construing the facts and reasonable inferences in favor of Watts, Watts' complaint to McCalmon only concerned McCalmon's approval of the two white applicants despite the discrepancies in their background checks. Although McCalmon's approval of these individuals may have been against SBC policy, Watts' complaint about McCalmon's actions does not rise to a level of statutorily protected expression that is actionable under Title VII or Section 1981. As the *Durkin* decision instructs, a plaintiff's complaints of discrimination cannot be vague or concern subject matter outside of the alleged discrimination. *Id.* at 615. Watts' complaint to

McCalmon concerning the white applicants is not only vague, but does not address discriminatory conduct in the first instance. In other words, there is no evidence that Watts' complaint made McCalmon "aware of the mistreatment and the corresponding protected activity." *See* at 614. Therefore, Watts has failed to establish that her complaint to McCalmon was a statutorily protected activity. *See id.*

### B. Causal Connection

Next, Watts contends that she can establish a causal link between her complaint to McCalmon and her termination because of their temporal proximity. *See Culver v. Gorman & Co.,* 416 F.3d 540, 545 (7th Cir. 2005) ("When an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct, the causation element of the prima facie case is typically satisfied.") (citation omitted). The *Culver* court, however, also stated that "suspicious timing may permit a plaintiff to survive summary judgment if *there is other evidence that supports the inference of a causal link.*" *Id.* at 546 (emphasis added). Indeed, the Seventh Circuit cautions that "there is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, but it is clear that 'mere temporal proximity' is not enough to establish a genuine issue of material fact." *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 981 (7th Cir. 2004) (citing *Stone,* 281 F.3d at 644).

Viewing the facts and all reasonable inferences in a light most favorable to Watts, she has failed to set forth any evidence – besides temporal proximity – to support an inference of a causal connection between her complaint to McCalmon and her termination. In addition, although Watts' complaint to McCalmon and her termination both occurred in May 2004, evidence in the

18

record indicates that the chain of events leading to Watts' termination based on her poor job performance and rude behavior was set into motion months before she complained to McCalmon about hiring the white applicants. Because McCalmon had already disciplined Watts for her inadequate job performance by putting her on the performance improvement plan before Watts complained to McCalmon, Watts' complaint concerning the white job applicants does not insulate her from her deficient job performance. *See, e.g., Buie*, 366 F.3d at 506-07. Therefore, Watts' claim that McCalmon's decision to terminate her employment was a "radical reversal of McCalmon's perception" of her "fitness as an employee" is simply not supported by the record. As such, Watts has failed to set forth evidence to create a genuine issue of material fact concerning the causal connection between her complaint and her termination. *See Schaife*, 446 F.3d at 740 (non-movant must set forth specific facts showing genuine issue of material fact for trial).

Because Watts has not established two of the three requirements under the direct method of establishing a case of retaliation, the Court grants SBC's motion for summary judgment on Watts' retaliation claim.

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Dated: July 31, 2006

                         **ENTERED**

                         _____
                         **AMY J. ST. EVE**
                         **United States District Judge**